IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES ESPY, <br> 27 E Cook Road <br> Mansfield, Ohio 44907 | ) ) ) ) ) ) | CASE NO: <br><br> JUDGE: |
| Plaintiff, | ) ) ) | (Jury Demand Endorsed Hereon) |
| v. | ) ) ) | |
| SKYBOX PACKAGING, LLC <br> c/o Marc D. Miller, Statutory Agent <br> 1275 Jack Pollock Parkway <br> Mansfield, Ohio 44903 | ) ) ) ) ) | |
| Defendant | ) | |

Plaintiff, James Espy, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

**NATURE OF THE CLAIMS**.

1. This is an action for declaratory, injunctive and equitable relief, as well as for monetary damages, to redress Defendant's unlawful employment actions against Espy, to include permitting and maintaining a hostile work environment based on Espy's race, African American, terminating Espy because of race, and terminating Espy in retaliation for his complaints of race discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Ohio Revised Code §§ 4112.02(A), (I).

**PARTIES.**

2. Espy is a resident of the city of Mansfield, Richland County, Ohio.

3. Skybox Packaging, LLC ("Skybox") is a domestic limited liability company whose principal place of business is located at 1275 Pollock Parkway, Mansfield, Richland County, Ohio 44903 ("Pollock Parkway Location").

4. Skybox is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

## JURISDICTION AND VENUE

5. Skybox is an Ohio company and/or citizen; hires citizens of the state of Ohio; contracts with companies in Ohio; and owns or rent properties in Ohio. As such, the exercise of personal jurisdiction over Skybox comports with due process.

6. This Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Espey's rights under Title VII of the Civil Rights Act of 1964.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE HISTORY.

8. Within 300 days of the conduct alleged below, Espy filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Skybox, Charge No. 532-2021-01472.

9. Espy dually filed his Charge of Discrimination with the EEOC and the Ohio Civil Rights Commission.

10. On or about July 8, 2021, the EEOC issued Notice of Right to Sue letter to Espy.

11. Espy received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Espy has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTUAL ALLEGATIONS.

13. Espy is African American.

14. In or about January 2019, Espy was placed in a manufacturing position with Skybox by a staffing agency, Spherion Mid-Ohio.

15. Espy worked at Skybox's plant in Mansfield, Ohio ("Mansfield Plant").

16. Espy was supervised by Todd Van Dyne during his employment with Skybox.

17. Van Dyne is Caucasian.

18. Van Dyne was not involved in the decision to hire or Espy at Skybox.

19. During Espy's employment, African Americans made up a minority of the employees at the Skybox's Mansfield Plant.

20. Aside from Plaintiff, only two other African Americans, Rodrick (last name unknown) and Ken (last name unknown) worked at Skybox's Mansfield Plant during Espy's employment.

21. Caucasians made up a majority of the employees at Skybox's Mansfield Plant during Espy's employment

22. During Espy's employment, all managers and supervisors at Skybox's Mansfield Plant were Caucasian.

23. During Espy's first week working at Skybox, Van Dyne made an announcement on Skybox's public address system ("PA") that "[Espy], Rodrick, and Ken, we have the fried chicken and grape Kool-Aid in the back" ("Chicken and Kool-Aid Comment").

3

24. A common racist stereotype is that African Americans like fried chicken and grape Kool-Aid.

25. Van Dyne directed the Chicken and Kool-Aid Comment at Espy, Rodrick, and Ken because they are African American.

26. The Chicken and Kool-Aid Comment was unwelcome and offended Espy.

27. Throughout Espy's employment, Van Dyne called Espy by nicknames instead of his name ("Nicknames").

28. Among the Nicknames, Van Dyne called Espy "Jamaal."

29. Espy's first name is not "Jamaal."

30. Van Dyne called Espy "Jamaal" because he associates the name Jamaal with African Americans.

31. Among the Nicknames, Van Dyne called Espy "Jamie Foxx."

32. Jamie Foxx is an African-American celebrity.

33. Espy does not resemble Jamie Foxx.

34. The Nicknames Van Dyne gave to Espy were exclusively based on race and/or related to race.

35. Van Dyne did not give nicknames to non-African-American employees.

36. Van Dyne gave Espy the Nicknames because of his race.

37. The Nicknames were unwelcome and offended Espy.

38. Espy's coworkers, including Matt Pfund and Phil (Last Name Unknown), made frequent racist comments to Espy and other African-American employees ("Racist Comments").

39. Pfund is Caucasian.

40. Phil is Caucasian.

41. Among the Racist Comments, in or about October 2020, either Pfund or Phil told an African-American coworker, Cameron (Last Name Unknown), "If I ever see your Black ass outside of here, I'm whooping your ass."

42. Pfund did not make threats of violence against non-African-American employees.

43. Phil did not make threats of violence against non-African-American employees.

44. Among the Racist Comments, in or about October 2020, either Pfund or Phil held up a plastic casing that resembled a noose and said to Espy, "Do you remember the 1800s?" ("Noose Comment").

45. Both Pfund and Phil were present for the Noose Comment.

46. The Noose Comment was a reference to lynching.

47. The Noose Comment was a thinly-veiled threat to lynch Espy.

48. The Noose Comment was severe.

49. Espy's coworkers made Racist Comments frequently.

50. Espy's coworkers made Racist Comments on a near daily basis.

51. In or about October 2020, Espy reported the Racist Comments to Van Dyne.

52. In or about October 2020, Espy reported to Van Dyne that Caucasian coworkers discriminated against him by refusing to help him with work tasks, even though they assisted Caucasian employees with the same or similar tasks.

53. In or about October 2020, Espy submitted a written report about the Racist Comments to Skybox's human resources department ("HR").

54. Skybox has a policy against discrimination and harassment ("Discrimination Policy").

55. The Racist Comments violate the Discrimination Policy.

56. The Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

57. Skybox has a policy to investigate reports of violations of its Discrimination Policy ("Investigation Policy").

58. An investigation should include interviewing the complainant.

59. An investigation should include interviewing the subject of the complaint.

60. An investigation should include interviewing the subject of the reported discrimination.

61. An investigation should include interviewing witnesses to the reported discrimination.

62. An investigation should include getting a written statement from the complainant.

63. An investigation should include getting a written statement from the subject of the complaint.

64. An investigation should include getting a written statement from the subject of the reported discrimination.

65. In response to Espy's Reports of Discrimination, Skybox did not interview Espy.

66. In response to Espy's Reports of Discrimination, Skybox did not interview Pfund.

67. In response to Espy's Reports of Discrimination, Skybox did not interview Phil.

68. In response to Espy's Reports of Discrimination, Skybox did not interview witnesses.

69. In response to Espy's Reports of Discrimination, Skybox did not get a written statement from Espy.

70. In response to Espy's Reports of Discrimination, Skybox did not get a written statement from Pfund.

71. In response to Espy's Reports of Discrimination, Skybox did not get a written statement from Phil.

72. In response to Espy's Reports of Discrimination, Skybox did not get a written statement from witnesses.

73. Skybox did not investigate Espy's Reports of Discrimination.

74. In response to the Reports of Discrimination, Defendants did not give Pfund a verbal warning.

75. In response to the Reports of Discrimination, Defendants did not give Phil a verbal warning.

76. In response to the Reports of Discrimination, Defendants did not give Pfund a written warning.

77. In response to the Reports of Discrimination, Defendants did not give Phil a written warning.

78. In response to the Reports of Discrimination, Defendants did not give Pfund a final warning.

79. In response to the Reports of Discrimination, Defendants did not give Phil a final warning.

80. In response to the Reports of Discrimination, Defendants did not give Pfund a suspension.

81. In response to the Reports of Discrimination, Defendants did not give Phil a suspension.

82. In response to the Reports of Discrimination, Defendants did not terminate Pfund's employment.

83. In response to the Reports of Discrimination, Defendants did not terminate Phil's employment.

84. In response to the Reports of Discrimination, Defendants did not transfer Pfund to a different location.

85. In response to the Reports of Discrimination, Defendants did not transfer Phil to a different location.

86. In response to the Reports of Discrimination, Defendants did not take action to separate Espy from Pfund.

87. In response to the Reports of Discrimination, Defendants did not take action to separate Espy from Phil.

88. In response to the Reports of Discrimination, Defendants did not discipline Pfund at all.

89. In response to the Reports of Discrimination, Defendants did not discipline Phil at all.

90. In taking no action in response to Espy's Reports of Discrimination, Skybox ratified their racist behavior.

91. Pfund and Phil continued to racially harass Espy after his Reports of Discrimination.

92. On or about October 23, 2020, the machine Espy was working on broke down.

93. On or about October 23, 2020, Espy asked Pfund for help fixing his machine.

94. Pfund helped Espy's Caucasian coworkers when their machines broke down.

95. On or about October 23, 2020, Pfund refused to help Espy fix his machine.

96. On or about October 23, 2020, a substitute supervisor, "John Doe," was filling in on Espy's shift because Van Dyne had called off work.

97. John Doe usually worked on a different shift.

98. John Doe was Van Dyne's father.

99. On or about October 23, 2020, when Pfund refused to help Espy fix his machine, Espy reported to John Doe that Pfund refused to help him because of his race ("Final Discrimination Report").

100. Pfund overheard the Final Discrimination Report.

101. In response to the Final Discrimination Report, Pfund told Espy to "shut the fuck up."

102. In response to the Final Discrimination Report, Pfund shoved Espy five times and punched him in the neck.

103. Everyone working on Espy's shift witnessed Pfund's shoving and punching Espy.

104. No one on Espy's shift stopped Pfund from attacking Espy.

105. Prior to Pfund's attack on Espy, Defendants knew that Pfund and Phil made threats of violence against African Americans.

106. Defendants took no action to prevent Pfund's attack on Espy.

107. Defendants took no action to stop Pfund's attack on Espy.

108. On or about October 23, 2020, Skybox terminated Espy's employment.

109. As justification for terminating Espy, Skybox cited Pfund's attack on Espy.

110. Espy had not affirmatively attacked Pfund or gone on the offensive against him.

111. Espy had merely defended himself against Pfund's physical attack.

112. Upon information and belief, Skybox has abstained from terminating non-African American employees who defended themselves from the physical attacks of a co-worker.

113. Skybox's purported justification for terminating Espy was a pretext for race discrimination.

114. Skybox's purported justification for terminating Espy was a pretext for retaliation based on Espy's protected complaints regarding race discrimination and racially-based harassment at Skybox.

## COUNT I: HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE, IN VIOLATION OF TITLE VII.

115. Espy re-alleges and incorporates by reference the allegations set forth in paragraphs 1-114, above.

116. During his employment with Defendants, Espy was subjected to offensive and harassing conduct by Phil, Pfund, Van Dyne, and others based on his race.

117. Espy opposed and reported the harassing conduct.

118. Defendants knew or should have known of the racist harassing conduct against Espy.

119. Defendants condoned, tolerated and ratified the racist harassing conduct.

120. Occurring nearly daily, the racist harassing conduct was severe and/or pervasive.

121. The racist harassing conduct was offensive to Espy.

122. The racist harassing conduct interfered with Espy's ability to perform his job duties.

123. The offensive and harassing conduct created a hostile and/or abusive work environment for Espy.

124. The offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Espy.

125. As a result of Defendant's creation and maintenances of a racist, hostile work environment, Espy has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

126. Skybox has acted with malice or reckless indifference to the rights of Espy, thereby entitling Espy to an award of punitive damages.

### COUNT II: HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE, IN VIOLATION OF R.C. § 4112.01 *et seq.*

127. Espy re-alleges and incorporates by reference the allegations set forth in paragraphs 1-114, above.

128. During his employment with Defendants, Espy was subjected to offensive and harassing conduct by Phil, Pfund, Van Dyne, and others based on his race.

129. Espy opposed and reported the harassing conduct.

130. Defendants knew or should have known of the racist harassing conduct against Espy.

131. Defendants condoned, tolerated and ratified the racist harassing conduct.

132. Occurring nearly daily, the racist harassing conduct was severe and/or pervasive.

133. The racist harassing conduct was offensive to Espy.

134. The racist harassing conduct interfered with Espy's ability to perform his job duties.

135. The offensive and harassing conduct created a hostile and/or abusive work environment for Espy.

136. The offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Espy.

137. As a result of Defendant's creation and maintenances of a racist, hostile work environment, Espy has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

138. Skybox has acted with malice or reckless indifference to the rights of Espy, thereby entitling Espy to an award of punitive damages.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF TITLE VII.

139. Espy re-alleges and incorporates by reference the allegations set forth in paragraphs 1-114, above.

140. Throughout his employment, Espy was fully competent to perform his essential job duties.

141. Defendant treated Espy differently than other similarly-situated employees based on his race.

142. Defendant violated Title VII by applying company policies against Espy in a disparate manner based on his race

143. Defendants violated Title VII by terminating Espy for conduct Defendant allowed non-African American employees to get away with.

144. Defendant violated Title VII by terminating Espy based to his race.

145. As a result of Defendant's discrimination against Espy in violation of Title VII, Espy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Espy to injunctive, equitable, and compensatory monetary relief.

146. As a result of Defendant's discrimination against Espy in violation of Title VII, Espy has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

147. In its discriminatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of Espy, thereby entitling Espy to an award of punitive damages.

148. To remedy the violations of the rights of Espy secured by Title VII, Espy requests that the Court award him the relief prayed for below.

**COUNT IV: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

149. Espy re-alleges and incorporates by reference the allegations set forth in paragraphs 1-114, above.

150. Throughout his employment, Espy was fully competent to perform his essential job duties.

151. Defendants treated Espy differently than other similarly-situated employees based on his race.

152. Defendant violated O.R.C. § 4112.01 *et seq.* by applying company policies against Espy in a disparate manner based on his race

153. Defendants violated O.R.C. § 4112.01 *et seq.* by terminating Espy for conduct Defendant allowed non African American employees to get away with.

154. Defendants violated O.R.C. § 4112.02(A) by terminating Espy based to his race.

155. As a result of Defendant's discrimination against Espy in violation of O.R.C. § 4112.02(A), Espy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Espy to injunctive, equitable, and compensatory monetary relief.

156. As a result of Defendant's discrimination against Espy in violation of O.R.C. § 4112.02(A), Espy has suffered mental anguish and emotional distress, including, but not limited to,

depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

157. In its discriminatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of Espy, thereby entitling Espy to an award of punitive damages.

158. To remedy the violations of the rights of Espy secured by O.R.C. § 4112.02(A), Espy requests that the Court award him the relief prayed for below.

### COUNT V: RETALIATION IN VIOLATION OF TITLE VII.

159. Espy re-alleges and incorporates by reference the allegations set forth in paragraphs 1-114, above.

160. As a result of Defendants' discriminatory conduct described above, Espy complained about the race discrimination he was experiencing.

161. Subsequent to Espy's reporting of race discrimination, Pfund attacked Espy at work.

162. Subsequent to Espy's reporting of race discrimination, Defendants took no action to stop Pfund from attacking Espy.

163. Subsequent to Espy's reporting of race discrimination, Defendants terminated Espy's employment.

164. Defendants' actions were retaliatory in nature based on Espy's opposition to the unlawful discriminatory conduct.

165. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing race discrimination.

166. As a result of Defendant's retaliation against Espy in violation of Title VII, Espy has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

167. In its retalitory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of Espy, thereby entitling Espy to an award of punitive damages.

168. To remedy the violations of the rights of Espy secured by Title VII, Espy requests that the Court award him the relief prayed for below.

## COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

169. Espy restates each and every prior paragraph of this Demand for Arbitration, as if it were fully restated herein.

170. As a result of Defendants' discriminatory conduct described above, Espy complained about the race discrimination he was experiencing.

171. Subsequent to Espy's reporting of race discrimination, Pfund attacked Espy at work.

172. Subsequent to Espy's reporting of race discrimination, Defendants took no action to stop Pfund from attacking Espy.

173. Subsequent to Espy's reporting of race discrimination, Defendants terminated Espy's employment.

174. Defendant's actions were retaliatory in nature based on Espy's opposition to the unlawful discriminatory conduct.

175. Pursuant to O.R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

176. As a result of Defendant's retaliation against Espy in violation of O.R.C. § 4112.02(I), Espy has suffered mental anguish and emotional distress, including, but not limited to, depression,

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

177. In its retaliatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of Espy, thereby entitling Espy to an award of punitive damages.

178. To remedy the violations of the rights of Espy secured by O.R.C. § 4112.02(I), Espy requests that the Court award him the relief prayed for below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff James Espy requests judgment in his favor against Defendant, containing the following relief:

(a) A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

(b) An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

(c) An order directing Defendant to place Espy in the position he would have occupied but for Defendants' discriminatory treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Espy;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Espy for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(e) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Espy for all non-monetary and/or compensatory damages, including, but not limited to, compensation for him mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(f) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Espy for harm to him professional and personal reputation and loss of career fulfillment;

(g) An award of damages for any and all other monetary and/or non-monetary losses suffered by Espy in an amount to be determined at trial, plus prejudgment interest;

(h) An award of punitive damages;

(i) An award of costs that Espy has incurred in this action, as well as Espy's reasonable attorneys' fees to the fullest extent permitted by law; and

(j) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*/s/Chris P. Wido*
Chris Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff James Espy*

## JURY DEMAND

Plaintiff James Espy demands a trial by jury by the maximum number of jurors permitted.

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**